IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

L2 WIRELESS, LLC,                    §
                                     §
            Plaintiff,               §
                                     §
v.                                   §            Civil Action No. 3:18-CV-2729-K
                                     §
SPRINT SOLUTIONS, INC. and           §
SPRINT NEXTEL CORP.,                 §
                                     §
            Defendants.              §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Sprint Solutions, Inc. and Sprint Nextel Corp.'s

Motion to Compel Arbitration and Dismiss, or in the Alternative, Stay Proceedings

(Doc. No. 8).  After careful consideration of the motion, the response, the reply, the

supporting exhibits, the applicable law, and any relevant portions of the record, the

Court **GRANTS** the motion and **dismisses with prejudice** Plaintiff's claims.

## A.    Factual and Procedural Background

Plaintiff L2 Wireless, LLC ("Plaintiff") served as an Authorized Business

Representative ("ABR") of Defendants Sprint Solutions, Inc. and Sprint Nextel Corp.

(collectively "Defendants") for approximately 14 years.  Plaintiff and Defendants

entered into their most recent Authorized Business Representative Agreement ("the

Agreement") in February 2017.  Under the Agreement, Plaintiff acted as an ABR of

Defendants, soliciting and subscribing customers to Defendants' services and selling Defendants' products. Defendants would then pay Plaintiff commissions for the subscribed services and products sold.

In August 2017, Defendants notified Plaintiff by letter that the Agreement was being terminated immediately because Defendants uncovered "a pattern and practice" by Plaintiff that violated the Agreement. Plaintiff contends that the Agreement was terminated without warning and without details of the alleged violations of the Agreement. Furthermore, Plaintiff complains it was not given an opportunity to cure. Upon the termination, Defendants stopped payment of any further compensation, and any compensation Plaintiff had already earned was subject to an offset of any amounts it owed to Defendants.

Plaintiff filed this lawsuit in this Court on the basis of diversity jurisdiction. Plaintiff asserts claims for breach of contract, fraud, negligent misrepresentation, tortious interference, unjust enrichment, defamation, and quantum meruit. Defendants subsequently filed this motion to compel arbitration arguing an arbitration provision in the Agreement requires Plaintiff to submit its claims to arbitration.

## B. Applicable Law

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate disputes arising out of a contract "shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The statute does not permit the trial court to exercise any discretion, "but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

On a motion to compel arbitration, the court conducts a two-step analysis. *Webb v. Investacorp., Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). The Court first determines whether there is a valid agreement between the parties to arbitrate a dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). In making this determination, the court looks to (1) whether the arbitration agreement is valid and enforceable and (2) whether the claims fall within the scope of that arbitration agreement. *Banc One*, 367 F.3d at 429; *see Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 486 (5th Cir. 2002)("Courts are limited to determinations regarding whether a valid agreement to arbitrate exists and the scope and enforcement of the agreement."). Once the court determines there is a valid arbitration agreement, the strong federal policy favoring the enforcement of arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One*, 367 F.3d at 429. In the second step, the Court must determine "'whether legal constraints external to the

parties' agreement foreclosed the arbitration of those claims.'" *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors*, 473 U.S. at 628).

"The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Grant v. Houser*, 469 F. App'x. 310, 315 (5th Cir. 2012)(per curiam). The party opposing arbitration bears the burden of establishing the invalidity of the agreement or that the claims are outside the scope of the agreement. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## C.    Application of the Law to the Facts

In their motion, Defendants contend the Agreement between the parties contains a valid agreement to arbitrate disputes. In support of this contention, Defendants submit the Dispute Resolution provision ("Arbitration Provision"), which is incorporated as Exhibit E to the Agreement. According to Defendants, this Arbitration Provision governs the resolution of disputes arising under or related to the Agreement and encompasses all of Plaintiff's claims; therefore, the Court must compel Plaintiff to arbitration. Plaintiff responds that the Arbitration Provision is invalid and unenforceable because: (1) it violates Kansas state law in limiting Defendants' liability and precluding certain remedies available to Plaintiff; (2) it is unconscionable on several grounds and, therefore, void; and (3) Plaintiff's claims do not fall within the

scope of the Arbitration Provision.  In their reply, Defendants again contend that the Arbitration Provision is valid, and argue that Plaintiff failed to sufficiently establish the Arbitration Provision is invalid and unenforceable for any of the reasons it asserts.

1.      **Agreement to Arbitrate Between the Parties**

The threshold question for the court is whether the parties agreed to arbitrate the dispute. *Mitsubishi Motors*, 473 U.S. at 628.  In determining whether an agreement to arbitrate exists, courts apply state law. *Banc One*, 367 F.3d at 429.  In accordance with state law, the court must decide (1) whether the parties have a valid agreement to arbitrate and (2) whether the dispute falls within the scope of that arbitration agreement. *Id.* at 429-30.  In this case, the parties contracted in the Agreement for a choice-of-law provision agreeing to Kansas law.  The parties do not dispute the validity of that provision, therefore the Court applies Kansas law. *See Overstreet v. Contigroup Cos., Inc.*, 462 F.3d 409, 411 (5th Cir. 2006).

a.      **Valid Agreement to Arbitrate**

Turning first to whether there is a valid agreement to arbitrate, Plaintiff does not dispute the existence of the Agreement with Defendants.  Instead, Plaintiff contends the Arbitration Provision is invalid and unenforceable because: (1) the Arbitration Provision violates Kansas public policy because it unlawfully limits Defendants' liability and precludes Plaintiff from recovering certain damages; and

(2) the Arbitration Provision is unconscionable for several reasons, including unequal bargaining power between Plaintiff and Defendants. At first blush, Plaintiff's arguments appear to challenge the validity or enforceability of the Arbitration Provision which would be a determination for this Court to make rather than the arbitrator. However, upon review of Plaintiff's arguments, it is readily apparent that Plaintiff's challenges go to the Agreement itself, and not solely to the Arbitration Provision.

There are two categories of challenges to the validity of an arbitration agreement: (1) a challenge to the validity of the arbitration agreement itself; and (2) a challenge to "'the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). It is only this first type of challenge that "is relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Rent-a-Center*, 561 U.S. at 70. The Supreme Court has remarked that Section 2 of the FAA provides that a written agreement to arbitrate "'is valid, irrevocable, and enforceable' *without mention* of the validity of the contract in which it is contained." *Id.* Unless the "validity" or "enforceability" challenges go specifically to the arbitration provision itself, the determination of the validity or enforceability of

the contract generally is for the arbitrator to decide. *Buckeye Check Cashing*, 546 U.S. at

445-46; *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967)

(the court may determine a challenge that "goes to the 'making' of the agreement to

arbitrate" only because "the statutory language *does not permit* the federal court to

consider [challenges to the contract] generally.")

1)      Limitation on Liability and Damages

In its first argument, Plaintiff complains the Arbitration Provision unlawfully

limits Defendants' liability for "gross negligence and willful or wanton misconduct" and

precludes Plaintiff from recovering damages it would otherwise be entitled to recover

under Kansas law.  Because of that, Plaintiff contends that the Arbitration Provision is

unenforceable because it violates public policy and Kansas law.  Plaintiff cites the Court

to specific language in the Arbitration Provision that arguably limits certain damages.

However, the problem for Plaintiff is that in that same argument, Plaintiff also cites to

Section 12 of the Agreement improperly limiting liability and damages in

contravention to Kansas law.

The Arbitration Provision provides in relevant part:

> *(D) Award*. The arbitrator or arbitration panel. . .will have the
> authority to render an appropriate decision or award, including
> the power to grant all legal remedies consistent with the terms of
> this [Arbitration Provision] and the law in Kansas. The arbitrator
> or arbitration panel will have no power to award: damages for lost
> profits, which are expressly excluded per Section 12 in the ABR

> Agreement; punitive damages of any kind; or any damages that
> are prohibited elsewhere in this Agreement.

Ex. A to Pl. Resp. at 56 (Doc. No. 13-1). Reading this section of the Arbitration

Provision in its entirety, rather than the isolated context given by Plaintiff, it is obvious

that Section 12 of the Agreement, not the Arbitration Provision itself, is the source of

the limitation as it limits liability and damages in the first instance. Section 12

provides:

> 12. Except for a party's indemnification obligations in this
> Agreement, or any claims resulting from a party's breach of its
> obligations under Sections 4-Order Placement, 8-Privacy, 9-
> Confidentiality, or 10-Use of Trademarks and Marketing, in no
> event will either party be liable for special, indirect, incidental,
> consequential or punitive damages of any kind, including without
> limitation, lost profits or other monetary loss arising from this
> Agreement.

*Id.* at 17.

First, Plaintiff's argument specifically attacks Section 12, a provision of the

Agreement, along with the same limiting language in the Arbitration Provision as being

invalid for violating Kansas public policy. Plaintiff's specific challenge to the validity

and enforceability of a provision of the underlying contract precludes the Court from

considering this challenge. *See Buckeye Check Cashing*, 546 U.S. at 445-46 (court may

decide "validity" or "enforceability" challenges that goes specifically to the arbitration

provision, but validity or enforceability challenges that go to the contract generally is

for the arbitrator to decide); *see Prima Paint*, 388 U.S. at 404 ("the statutory language *does not permit* the federal court to consider [challenges to the contract]")

Even without Plaintiff's own specific reference to Section 12, Plaintiff's argument is ultimately an attack on the validity or enforceability of the Agreement because it is Section 12 of that contract that limits a party's liability and precludes certain damages. Therefore, the Court would necessarily have to determine the enforceability and validity of Section 12 of the Agreement because these limitations are not set forth separately and independently in the Arbitration Provision. "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70; *see also Buckeye*, 546 U.S. at 444-45 (citing *Prima Paint*, 388 U.S. at 403-04). Therefore, Plaintiff's challenge to any limitations on liability and damages must be submitted to the arbitrator as part of the underlying dispute. *See Buckeye*, 546 U.S. at 445-46; *see also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003) ("In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for the courts or arbitrators to decide enforceability in the first instance are unusually abstract", so compelling arbitration was the proper decision").

2) Unconscionability

Plaintiff next argues that the Arbitration Provision is void because it is procedurally and substantively unconscionable for the following reasons: (1) there is vast inequality of bargaining power between the parties; (2) the provisions are incomprehensible to the layperson; (3) the Arbitration Provision was not signed by Plaintiff because it was hidden and not in the body of the Agreement; (4) Plaintiff is required to pay half the arbitration costs which penalizes Plaintiff; and (5) the provisions are one-sided in Defendants' favor.

Kansas law provides that "'a party who freely enters a contract is bound by it even though it was unwise or disadvantageous to the party, so long as the contract is not unconscionable.'" *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1125 (D. Kan. 2003) (quoting *Moler v. Melzer*, 24 Kan.App.2d 76, 77 (Kan. Ct. App. 1997)). Unconscionability is considered in the context of the specific facts of each case. *Wille v. Sw. Bell Tel. Co.*, 219 Kan. 755, 758 (Kan. 1976)*; see John Deere Leasing Co. v. Blubaugh*, 636 F. Supp. 1569, 1573 (D. Kan. 1986). The party attacking the contract has the burden of establishing the provision is unconscionable, and Kansas courts require the party to show "'additional factors such as deceptive bargaining conduct'" for a contract to be rendered unconscionable. *In re Universal*, 300 F. Supp. 2d at 1125; *Wille*, 219 Kan. at 759; *see Oesterle v. Atria Mgmt. Co, LLC*, No. 09-4010-

JAR, 2009 WL 2043492, at *3 (D. Kan. July 14, 2009) (unconscionability requires a showing of "additional deceptive bargaining practices in the execution of the agreement"). Recognizing the extreme situations unconscionability is intended to remedy, the Kansas Supreme Court confirmed:

> [T]he doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain.

*Wille*, 219 Kan. at 759-60.

Plaintiff's argument regarding inequality of bargaining power begins and ends with references to the Agreement and "when the Agreement was signed." The entirety of this argument addresses the parties' bargaining power only as it pertains to the Agreement, not the Arbitration Provision. Unless the "validity" or "enforceability" challenges go specifically to the arbitration provision itself, the determination of the validity or enforceability of the contract generally is for the arbitrator to decide. *Buckeye Check Cashing*, 546 U.S. at 445-46; *see Prima Paint*, 388 U.S. at 403-04 (the court may determine a challenge that "goes to the 'making' of the agreement to arbitrate" only because "the statutory language *does not permit* the federal court to consider [challenges to the contract]"); *see also Universal Serv. Fund*, 300 F. Supp. 2d at 1125 (citing *Aves ex rel. Aves v. Shah*, 258 Kan. 506, 520 (1995)) ("Mere inequality of bargaining power is

insufficient to render a contract unconscionable."); *Adams v. John Deere Co.*, 13 Kan.App.2d 489, 494 (Kan. Ct. App. 1989)(quoting *Wille*, 219 Kan. at 759) (inequality of bargaining power may be factor for the court to consider, but "mere disparity of bargaining strength, without more, is not enough to make out a case of unconscionability. . . .[T]here must be additional factors such as deceptive bargaining conduct as well as unequal bargaining power to render the contract between the parties unconscionable.").  This challenge by Plaintiff is for the arbitrator to decide, not this Court.

The remainder of Plaintiff's unconscionability arguments do address the Arbitration Provision specifically, therefore the Court can properly consider these challenges.  The Court notes at the outset that Plaintiff does not cite any case law in support of these unconscionability arguments and submits nothing more than mere conclusory statements with no citations to the record.  This does not satisfy Plaintiff's burden in resisting arbitration.  *See Carter*, 362 F.3d at 297.  For these reasons alone, the Court is unpersuaded by these challenges.  Even upon the Court's consideration of them, these unconscionability arguments are without merit.

Plaintiff contends the terms of the Arbitration Provision are "incomprehensible to the layman" and "an ancillary" wireless communications company like Plaintiff "would not be familiar with these complicated provisions" as would be Defendants, "a

large, powerful wireless-communications company." Yet, Plaintiff fails to identify any of these allegedly "incomprehensible" terms in the Arbitration Provision. The Arbitration Provision at issue is slightly more than two (2) pages in length, uses plain language, and sets forth numbered and lettered sections and sub-sections in bold and italicized type with clearly designated titles. "The arbitration clause is written in relatively plain language, not confusing terms, and emphasizes important aspects in bold all-capital lettering." *In re Universal*, 300 F. Supp. 2d at 1126 (applying Kansas state law in finding no basis on unconscionability principles regarding language used in arbitration provision in long-distance carrier contract with customers).

Of noteworthy importance to the Court, Section 11.6 of the Agreement, entitled "Review of Agreement," expressly states:

> [Plaintiff] represents that it has carefully reviewed this Agreement and has had sufficient opportunity to consult with a lawyer, accountant, or other professional advisor. [Plaintiff] represents that, if it did not use a professional advisor, it is satisfied in relying on its own education, experience, and skill in evaluating the merits of and entering into this Agreement.

Doc. No. 1-1 at 18. Plaintiff does not claim it did not have time to read the Agreement, and, by virtue of Section 11.6, Plaintiff represents that it did indeed "carefully review[] this Agreement". This would include reading Section 17 which specifically incorporates the Arbitration Provision and explicitly references Exhibit E [the Arbitration Provision]. *Id.* at 23. Again, by virtue of Section 11.6, Plaintiff unequivocally

represents that if it did not consult with a professional, then "[Plaintiff] is satisfied in relying on its own education, experience, and skill" in relation to the Agreement. Plaintiff cannot now claim that it is not as savvy as Defendants to understand these provisions and, therefore, the Arbitration Provision is unconscionable. *See In re Universal*, 300 F. Supp. 2d at 1126 (rejecting unconscionability argument where "Sprint's customers had ample time to review those terms and conditions, whether they chose to do so or not, and cancel their service with Sprint if they did not wish to be bound by them"). This argument fails.

Plaintiff next complains that the Arbitration Provision was "hidden" and Plaintiff did not sign it because "[Defendants] buried [the provisions] in a multitude of attachments to the Agreement, and were not in the Agreement's body." The Court is uncertain whether Plaintiff's argument centers on the Arbitration Provision being "hidden" in an exhibit to the Agreement, or whether the absence of Plaintiff's signature is the fatal flaw, or both. Regardless, this challenge fails. The fact that Plaintiff did not sign the Arbitration Provision itself is irrelevant and does not establish unconscionability. The FAA requires only that an agreement to arbitrate be written; it does not require signature of the parties for it to be enforceable. 9 U.S.C. § 2; *see Bellman v. i3Carbon, LLC*, 563 F. App'x. 608, 614 (10th Cir. 2014); *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973); *Howard v. Ferrellgas Partners,*

*L.P.*, 92 F. Supp. 3d 1115, 1131 (D. Kan. 2015). Plaintiff has submitted no argument or controlling authority to the contrary.

To the extent this unconscionability argument centers on the Arbitration Provision being "hidden" in an exhibit to the Agreement rather than the body of the Agreement, the Court can quickly dispose of this argument as the record before this Court do not support Plaintiff's characterization of the Arbitration Provision. Section 17 of the Agreement itself, entitled "**Dispute Resolution**", specifically provides that "[d]isputes under this Agreement will be resolved according to Exhibit E." Doc. No. 1-1 at 23. This language clearly directs Plaintiff to the specific exhibit containing the Arbitration Provision and its unambiguous language. Moreover, Section 18.10 of the Agreement specifically incorporates the exhibits by reference. *See id.* at 24. Finally, as the Court already noted, Plaintiff unequivocally represents it has "carefully reviewed this Agreement" by virtue of Section 11.6 of the Agreement. Plaintiff does not establish that the Arbitration Provision was "hidden". *See Adams*, 13 Kan.App.2d at 492 (party is bound by the contract it enters into "regardless of a failure to read the contract or inclusion of terms disadvantageous to one party" unless the party establishes "procedural abuses arising out of the contract formation or because of substantive abuses relating to the terms of the contract."). More importantly, Plaintiff wholly fails to establish that even if the Arbitration Provision was "hidden", it is unconscionable.

Plaintiff is required to make a sufficient showing of additional factors that would establish unconscionability; Plaintiff did not submit any "additional deceptive" factors. *See In re Universal*, 300 F. Supp. 2d at 1125; *Osterle*, 2009 WL 2043492, at *3. This argument fails. *See Wille*, 219 Kan. at 759-60.

Plaintiff also argues that the Arbitration Provision is unconscionable because Plaintiff is forced to pay half the costs of any arbitration proceeding. The Supreme Court has recognized that, under certain facts, excessive arbitration costs could render an arbitration agreement unconscionable. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000). However, "a party seeking to avoid arbitration on the ground that arbitration would be prohibitively expensive" bears the burden of showing the likelihood of incurring prohibitive costs. *Id.* Here, Plaintiff fails to argue, let alone establish, that arbitration costs would be "prohibitively expensive"; instead, Plaintiff contends only that it was "penalize[d]" by Defendant in being responsible for half of any arbitration costs. Plaintiff failed to make the required showing, therefore this argument fails. *See id.* at 90 n.6 (party resisting arbitration asserted only unsupported statements regarding arbitration costs, completely failing to provide any basis for the Supreme Court to conclude she "would in fact have incurred substantial costs in the event her claim went to arbitration.").

Finally, Plaintiff argues the Arbitration Provision terms are "unduly one-sided" in favor of Defendants. The law is clear that Plaintiff, as the party attacking the agreement, has the burden of establishing additional factors, like deceptive bargaining practices, to establish unconscionability. *See In re Universal*, 300 F. Supp. 2d at 1125; *Oesterle*, 2009 WL 2043492, at *3 (unconscionability requires a showing of "additional deceptive bargaining practices in the execution of the agreement"). Plaintiff does not satisfy its burden. While Plaintiff may consider some of these provisions to be disadvantageous or less-than-desirable, that allegation will not, without more, support a finding of unconscionability. *See Wille*, 219 Kan. at 759-60 ("[Unconscionability] is directed against one-sided, oppressive and unfairly surprising contract, and not against the consequences per se of uneven bargaining power or even a simple old-fashioned bad bargain."). This argument fails.

In conclusion, the Court finds there is a valid and enforceable agreement to arbitrate a dispute between the parties.

### b.    Claims Within Scope of Arbitration Agreement

The Court must next determine whether Plaintiff's claims fall within the scope of the Arbitration Provision. *See Banc One*, 367 F.3d at 429. Plaintiff argues that its claims are outside the scope of the Arbitration Provision because the arbitrator is precluded from awarding the type of remedies Plaintiff seeks as damages for

Defendants' alleged "gross negligence and willful or wanton misconduct". The Court

disagrees and finds Defendants have established Plaintiff's claims fall squarely within

the broad scope of the clear language of the Arbitration Provision. *See also Moses H.*

*Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)(FAA requires any

doubts regarding the arbitrability of the claims at issue to be resolved in favor of

arbitration).

The Arbitration Provision provides, in relevant part:

> **1. Dispute Resolution.** All Disputes under this Agreement are
> subject to the following dispute resolution process. A "Dispute"
> means any controversy, dispute, or claim of every kind (including
> claims, counterclaims and cross claims), and nature arising out of
> or relating to the negotiation, construction, validity,
> interpretation, performance, enforcement, operation, breach,
> continuation or termination of this Agreement, whether arising
> out of common law or state or federal law.

Doc. No. 10-1 at 3. It is well-established that the use of language providing for "any

controversy or claim arising out of or relating to this Agreement" being subject to

arbitration is considered a broad arbitration clause. *See, e.g., Prima Paint*, 388 U.S. at

398; *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274-75 (10th Cir.

2010) (use of the language "arising out of" in the arbitration clause left the court with

"little trouble determining" provision is broad); *Brown v. Coleman Co., Inc.*, 220 F.3d

1180, 1184 (10th Cir. 2000) (arbitration clause including "all disputes or controversies

arising under or in connection with this Agreement" is "the very definition of a broad

arbitration clause."). Use of a broad provision "gives rise to a presumption of arbitrability of any claims connected with the Agreement." *Trading Places Aeronautica S.L. v. Raytheon Aircraft Corp.*, 35 F. Supp. 2d 1308, 1311 (D. Kan. 1999). The presumption of arbitrability can be overcome only "if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995)).

In this case, Plaintiff asserts state law claims against Defendant for: (1) breach of contract; (2) fraud; (3) negligent misrepresentation; (4) tortious interference with an economic relationship; (5) tortious interference with a prospective economic relationship; (6) unjust enrichment; (7) defamation and defamation per se; and (8) quantum meruit. Based on Plaintiff's own allegations in its Complaint, each of these claims turns on the parties' Agreement and the terms therein, more specifically the formation, performance, enforcement, breach, and termination of the Agreement. The Court concludes each of Plaintiff's claims fall within the very broad scope of the Arbitration Provision pursuant to its clear language.

Plaintiff's only argument that its claims fall outside the scope of the Arbitration Provision centers on the Arbitration Provision language limiting any award the arbitrator may fashion. In certain of its claims, Plaintiff makes a single sentence

allegation that Defendants' conduct was "willful, malicious and oppressive" and it seeks damages based upon such conduct. Plaintiff argues that, because it makes this allegation, its claims fall outside the scope of the Arbitration Provision because an arbitrator is precluded from awarding damages for "gross negligence and willful or wanton misconduct". This argument goes to the limitations on liability and damages set forth originally in the Agreement which the Court previously determined must be submitted to the arbitrator. The Arbitration Provision also provides specifically that any dispute regarding the validity of the Agreement must be submitted to arbitration. *See* Doc. No. 10-1 at 3. This argument goes to the validity of the Agreement's provision limiting the liability and damages, and therefore it must be submitted to the arbitrator as part of the underlying dispute. Finally, regardless of any limiting language, the Arbitration Provision clearly vests the arbitrator with authority "to render an appropriate decision or award, including the power to grant all legal remedies consistent with" Kansas law. The Court does not know how the arbitrator will interpret any limitation on damages in light of his authority to craft an appropriate award consistent with Kansas law; therefore, the Court concludes arbitration is "the proper decision." *PacifiCare*, 538 U.S. at 407 ("In short, since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for the courts or arbitrators to decide

enforceability in the first instance are unusually abstract . . . the proper course is to compel arbitration.").

"Once the court determines there is a valid arbitration agreement, any remaining arguments that target the validity of the contract as a whole are questions for the arbitrator." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018). Simply alleging this type of conduct and seeking damages related thereto cannot and does not take the claims outside the scope of the Arbitration Provision. This argument fails and the Court finds all of Plaintiff's claims are subject to arbitration.

### 3. Conclusion

Defendants proved by a preponderance of the evidence that there is a valid agreement to arbitrate between the parties. *See Grant*, 469 F. App'x. at 315. Plaintiff did not meet its burden to establish the Arbitration Agreement is invalid and unenforceable or that Plaintiff's claims are outside its scope. S*ee Carter*, 362 F.3d at 297. Nothing before the Court establishes any legal constraints would preclude the arbitration of all of Plaintiff's claims. "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *See Celaya v. Am. Pinnacle Mgmt. Servs., LLC,* Civil Action No. 3:13-CV-1096, 2013 WL 4603165, at *2 (Aug. 29, 2013)(Fitzwater, CJ). Accordingly, Plaintiff is required to arbitrate all of its claims against Defendant

pursuant to the valid Arbitration Provision and the Court must grant Defendant's motion.

### 4.    Stay or Dismissal of Action

Defendants ask the Court to dismiss Plaintiff's claims with prejudice or, in the alternative, to stay the case. The Court must stay the action upon application of one of the parties. 9 U.S.C. § 3. "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. If all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999). Having determined all of Plaintiff's claims are subject to binding arbitration, the Court concludes there is no other reason to retain jurisdiction over this case and dismissal of this action is more appropriate rather than to stay and abate the case as no purpose would be served by a stay. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (dismissal of case preferred when staying the case and the court retaining jurisdiction serves no purpose). Accordingly, because the Court orders all of Plaintiff's claims must be submitted to arbitration, this case is **dismissed with prejudice**. *See* 9 U.S.C. §§ 3 & 4; *Vican, Inc. v. Incipio Techs., Inc.*, 3:15-CV-2720-L, 2016 WL 687155, at *1 (N.D. Tex. Feb. 2, 2016)(Lindsay, J.).

**D.      Conclusion**

For the foregoing reasons, the Court **grants** Defendant's motion to compel arbitration of Plaintiff's claims and the case is hereby **dismissed with prejudice** except to being reasserted in arbitration and in actions upon the arbitration award.  *See* 9 U.S.C. §§ 3 & 4.

   **SO ORDERED.**

Signed August 22nd, 2019.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE